Good morning. Richard Rome for Mr. Davis. You made an arrangement of split time? Yes. What we're going to do here, just for the court's information, on my case I want to address the 924C issue, the drug-related argument. I'll defer to co-counsel and join in her legal arguments there. I think they're relatively similar here. In this case, Mr. Davis was convicted of three drug counts and on count eight of using and carrying a firearm during a crime of violence or a drug trafficking fine. That's 18 U.S.C. 924C. It's our contention that that conviction needs to be reversed  For a conviction on that count, it requires two elements, using or carrying a deadly weapon, and that has to be done during a crime of violence or a drug crime. So factually, in this case, the defendant was found with a weapon. A weapon was found after he was involved in a car accident and went into his relative's apartment or residence. So the issue here... Carrying a gun. Yes, he was carrying a weapon. So that's really not the issue. So you're not continuing with your argument that there was insufficient evidence to find that he was in possession of a gun? Well, I'd submit that argument. Thank you. That's a disputed fact, and I don't think there's a lot of... And it's my understanding that you stipulated or did a trial that Rico was a crime of violence. Well, it was... I don't know if they stipulated. I know that it was in the jury instructions, it was considered to be a crime of violence, the conspiracy to commit Rico, so... Unless you... I thought that he had stipulated that it was a crime of violence. Well, I guess if it was in the jury instruction, I guess we could look at it as a stipulation. Whether they separately stipulated on the record, I can't recall that specific fact at this point. Well, what is your argument as to why... I thought your argument was going to be that the Rico conspiracy cannot be deemed a crime of violence. Well, it can't be, but what happened after the conviction, of course... How is that argument before us if your client, as Judge McGeehan just mentioned, in fact... Well, there's been a change in the law since that case came down, which was the Johnson and DiMaio cases. So I think that that allows us to raise the question as to whether that issue is now a viable issue, and that's basically where we're at here. Because just maybe I'll try to let you know where my thinking is. Yes. Because it's in your favor, but maybe you'll tell me if I've got something wrong. If it's in my favor, you've got it right. You would say that the only way the Rico conspiracy charge could have been deemed a crime of violence before was under the residual clause. That's correct. Now that that has been struck down and we go to the elements clause, it doesn't match because some of the predicate offenses for Rico can be nonviolent crimes. Is that the... Well, that's part of it. Right. 16B is struck down, 924C3B. So the issue now is whether under 924C3A, that conspiracy to commit Rico is a crime of violence. And if I can just read the sentence, what that is, the A section is it's a felony which has as an element the use, attempted use, or threatened use of physical force against the person or property of another. And so the conspiracy to commit Rico, it does not have one of those elements as it. It's really an agreement to do something. It could because what you're going to end up doing, I assume you agree with this, is you're going to look to the predicate offenses that form the basis for the Rico charge, right? Well, I don't think we need to do that anymore. I think... You have to. There's no other way to... Well, if the court looks at the 28J letter, and basically the question is, is an agreement, this is a conspiracy to commit Rico, is an agreement considered to be the use, attempted use, or threatened use of physical force. Right. And let's say all of the predicate offenses for the Rico charge are murder. That's all of them. That's the only thing the government charged was murder on 5, 10, 50, 100 different occasions. Those are all the predicate offenses for the Rico conspiracy. You're not going to be able to argue that that's not a crime of violence, are you? It's not because it's not the use of a murder. It's not the attempted use or the attempted murder, and it's not the threatened murder. It's an agreement. I can be... Any conspiracy would never fulfill a crime of violence. Well, according to... It wouldn't fulfill it under this section, and that's what I think that that's basically what we're finding. Let me just point... I don't... That just doesn't make any sense to me at all. But let me point to you a different argument that I think maybe you could make with a little bit more success. Am I right in remembering that here the predicate offenses for this Rico conspiracy consisted either mainly or maybe exclusively of nonviolent offenses? Well, they were substantially drug offenses. Right. That's true. So why don't you just argue that in this instance we don't know whether the jury necessarily found that your client agreed to commit any act of violence because it could have convicted him of the Rico conspiracy solely on the drug traffic. Well, that would be one way to look at it. I think... Well, I guess I could say it in rebuttal, but the government's going to say that he was involved in some type of murders. Right, but the jury did not have to find that in order to convict him. And under the categorical approach, isn't that what we're supposed to have? That's correct. And the categorical approach is basically an agreement. And so I thought what the court's saying, I would say that that is another argument. We could say that we don't know what they were agreeing to because it was primarily drug offenses. But I would also say that when there's just an agreement to do something and we don't need overt acts for Rico, then that's really not the use or attempt. So you're saying conspiracy to commit murder, that's not a crime of violence? Really? Not for purposes of... I'm sure we have a case that says conspiracy to commit murder. Well, not for purposes of 924C3. Do you have a case that says that? This might be the case that will say it. Okay. But... Well, we certainly don't have to get there because, as I said, the predicate offenses are not murder in this case. Well, we could say that primarily that it... And I understand what the court's saying is that we could consider it to be a drug offense and that would be another way to fall within where it would not be a crime of violence. So that would be the alternate argument. So under either of those arguments, I would request that the court set that aside. In this particular case, there was a five-year consecutive 60-month sentence that bumped his sentence up to 300 months. And I think that the court can strike that and get rid of that and perhaps remand whatever the court would want to do on a sentencing. I would like to reserve a few minutes for rebuttal. I think co-counsel will have an argument on the drug cases and then I'd like to have also rebuttal on that. Thank you. Good morning, Your Honors. May it please the court, Rebecca Jones appearing on behalf of Appellant Laws. I actually just had a few brief comments to make regarding the government's arguments on both the RICO conspiracy and the drug conspiracy. If you look at the government's arguments on the RICO conspiracy, any time you have a gang member who's selling drugs, you're going to have sufficient evidence for a RICO conspiracy and that cannot be the case. There has to be some proof that the person who's supposed to have joined the RICO conspiracy had the specific intent to move the RICO operation enterprise forward. And in this case, even though there was some expert testimony that some of the members of the Pueblo Bishops gang were splitting up their drug proceeds and sharing them, there was no evidence that Mr. Laws was doing that. He was primarily just a drug dealer. He may have been taking advantage of the fact that the Pueblo Bishops controlled this drug trade area, but there was no evidence that he specifically did that. It's just he lived in the area, he was a gang member and he was selling drugs and there wasn't evidence of the specific intent to move the RICO conspiracy forward. So I would like the court to consider that when it's decided. But wasn't there testimony that he brought some of the other gang members along, that he was helping them, working with them in buying and selling and also making crack cocaine and that they were doing it for the gang? I disagree that they were doing it, quote unquote, for the gang. He was using another gang member's property. I think he was a mentally disabled man named George who he was sort of using to help cook up the crack cocaine. That's true. You disagree with that contention or you disagree that there was any evidence that would support that? I disagree that there was evidence that he was selling drugs on behalf of the gang, that it was personal. Some of his drug contacts were fellow gang members, but I think there's a distinction between doing something for the gang. It seemed like there was a lot of testimony from people who were former gang members and senior gang members, founding gang members. I mean, there's quite a lot of information, remarkably actually, about the workings of this gang and how one of the purposes was to enforce this drug monopoly and the measures that gang members took in doing that. Including there was evidence that Mr. Laws may have benefited from that and that he boasted online of his membership in the gang and his work with others and collaborating with others to sell drugs. I don't believe, I don't recall evidence of him boasting of working with others. He did boast about being a gang member. He did boast about being a drug dealer. Well, then couldn't a jury draw reasonable inference, which is what we're looking at, because you're challenging the sufficiency of the evidence that was presented at trial, that a jury could draw reasonable inference from all of that evidence that was presented that that was one of the purposes. One of his purposes of selling drugs was to benefit the gang? Yes. Well, further the objectives of the gang. You know, I suppose there are gang cases in which it's clear people are, you know, there wasn't any specific evidence tying Mr. Laws in that way and I think it's too much of a leap to say he was doing it to benefit the gang as opposed to benefiting himself, being a selfish individual. But I concede that there was quite a bit of evidence about his extended gang membership and quite a bit of evidence about his own personal activities in terms of cooking up crack cocaine and buying and selling it. So I'll let the court draw the inferences that it thinks is appropriate in that regard. The only other point I wanted to make in terms of the government's legal arguments on the drug conspiracy is that the government placed a lot of weight on the fact that Mr. Laws was buying drugs from other gang members and then redistributing them, but I don't think that defeats my buyer-seller argument because every seller has to buy drugs from someplace unless it's like they have their own marijuana growing in their backyard or something. So the fact that you buy your drugs and then redistribute them does not necessarily make you a member of a drug conspiracy. There has to be further behavior beyond that. And with that, I'll submit. May it please the Court, Mack Jenkins on behalf of the United States. Good morning, Your Honors, and I was trial counsel at the underlying trial in this case. Maybe you can start with the 924C count because as I indicated when your opponent was up here, I am troubled by whether that conviction can stand given the way the predicate offenses for the RICO conspiracy were charged here. So maybe walk me through why you think under existing law that conviction is still valid. Yes, Your Honor, and we still believe in-rate juvenile mail provides helpful instruction on how to do that. And that is the fact that you do have to look at the predicates in order to determine what the racketeering conspiracy is. There's racketeering conspiracies that involve no violence whatsoever, more commercial fraud, those types of offenses. Here, we specifically alleged, and it was proven at trial over and over and over again, that this was not some white-collar racketeering conspiracy. These were murderers, robbers, and assaulters. Hang on. And unfortunately, I don't have the jury instructions in the verdict form in front of me, but I know you've got them. I guess I recall the jury instructions. Didn't they mainly say that the predicate offenses were drug trafficking crimes, or at least one of the predicate offenses mentioned there was drug trafficking, which I don't think would be deemed on its own. Correct. Yeah, it was not exclusively, like your example previously, it wasn't all murders or all robbery murders. Drug trafficking was one of the predicates. Okay. And just then remind me, the verdict form didn't require the jury to specify which of the predicates. It did not. Okay. So if that's true, then why, under the Supreme Court's categorical approach case law, aren't we stuck with saying we don't know what the jury actually found as the basis for the RICO conspiracy conviction? It could have been based solely on drug trafficking offenses, which would not qualify as crimes of violence under the A part of the statute. Yes. And I think even using that approach, the fact that the conspiracy alleged does, in fact, involve crimes of violence, they're intertwined with each other, there are nonviolent racketeering predicates, but they go hand in hand with the violent racketeering predicates. And my understanding of that approach and how it was, and why it wasn't stipulated at the trial court, but we convinced the district court that RICO was a crime of violence using the law at the time. So there was no stipulation? Yes. I wanted to clarify that. We basically just prevailed on that issue. I'm sorry, when you say you convinced the district court, there was argument regarding whether or not RICO was a crime of violence? I don't even know if it reached the argument stage, but in our proposal for jury instructions, we provided support that indicated that RICO was a crime of violence where the underlying predicates, where there is an underlying predicate crime of violence. And did the defense object to that instruction? I do not. I was trying to look for that. I do not see a record of an objection. So is it your position that what were the predicate offenses here? Murder, robbery, including Hobbs Act robbery. Drug trafficking were the three main racketeering predicates, along with witness intimidation. Do you have the jury instruction there? I apologize. I just forgot to bring it down. Can you just look that and just tell us from the jury instruction what the jury was told the predicates were? Because I thought it was skewed more heavily toward drug trafficking, but maybe I'm not remembering that right. One moment. It would take a second. I only have the verdict forms for both. Okay. Well, I'm sorry. I don't mean to interrupt your argument. If you don't have it handy, that's fine. Yeah, I thought I saved it on here. But what's your recollection? That definitely drug trafficking was one of them and a significant one. Okay. So just go back to my question, though. I guess if we're looking at this verdict and we're trying to figure out what did the jury necessarily find as the basis for conviction, isn't the most that we can say is that it could have rested just on the drug trafficking offenses alone? I think the way our position at this point is that, you know, the way the case was charged involving the crimes of violence as racketeering predicates necessarily was what established that enterprise. And we do think if you just look at the offense itself, the conspiracy to engage in racketeering activity, here we define what that racketeering activity is. And just looking at it from that perspective, it does identify crimes of violence. But I see your point. I mean, I'm just all I'm saying is that the jury could have heard all of your evidence. Could I agree? There was evidence of violence, robbery, murder, whether Defendant Davis was directly involved. That's another story. But certainly it was part of the overarching conspiracy. But let's say the jury just said, no, we don't buy any of that. Or at least we don't think that Davis had the requisite mens rea with respect to those offenses. But it's clear as day that the guy was involved in drug dealing. So we found more than three predicate drug trafficking offenses. That's enough under the instructions that the judge gave us to convict him. So we're going to convict him. And if that's all we had, then it seems to me you're not going to be able to say sustain the nine twenty four seat count as to that conviction as a predicate. Right. And I don't know if that is correct, because the argument would be that it is not just Coke. It is not just Defendant Davis's personal activities in the racketeering conspiracy. It is all the conspirators. And no, I'm agreeing with you. But I'm just saying when we look at the verdict form, which doesn't say we the jury found these predicate offenses. Correct. So it could have just found only drug trafficking offenses. Right. That was the sole basis for the conviction in that scenario. Are you just tell me your position. Can the nine twenty four seat count stand or no. In that scenario, it would not appear so. And I think the problem where we have, unfortunately, with the jury instruction saying racketeering conspiracy was a crime of violence. Of course, that obviated the need to have that specificity. So I do think. So what would be the result here if we did it again with those specificity? I don't know. What do we do? What do we do? What's the result here? What would be the remedy here? We believe the evidence was overwhelming that the racketeering conspiracy was a crime of violence. And I think in rate juvenile mail still controls. The evidence may have been overwhelming. Yes. That the racketeering conspiracy was a crime of violence. But the jury was never asked to make the determination of the predicate offenses. And we know based on case law that came out subsequent to this, that there were at least some predicate offenses that were charged that don't fall under the definition of a crime. Well, they they fall under the C3 C that is no longer valid law. In our 28 J letter, we filed a case and you just answer it straightforward. What would happen here if you vacate if we vacate? Was that what happened? We would vacate the 924 C. Correct. And then so the additional how many years did he get based on that? About 25 years. So it would be down to 20 years. So, yeah, I would require vacating the 924 C and reducing the sentence from 25 to 20 years. And what's your best argument not to do that? Going back and back to the overwhelming evidence that not only that this case, this enterprise was engaged in regularly significant violence on behalf of the gang. On top of that, this defendant Davis specifically was one of the leaders. He was known as a YG general and he earned that ignominious title because he killed people. He shot people. He beat people. He robbed people. Almost all of those activities with guns. And that was clear from the record. It was clear from how many times, frankly, every witness talked about Jason Davis. Some talked about Kevin Elby, a co-defendant. Some talked about Rashad Laws, another co-defendant. But basically every cooperating witness talked about this defendant Davis being engaged in violence and using weapons. And that for us, that was the strongest reason we we brought that 924 C because the 924 C legislative history essentially says we want to stop criminals from carrying guns everywhere because it makes everything worse in short. This is precisely the defendant who should never have a gun. And that's why we think that that's our strongest pitch for why it should stand because it does fit. We believe it still fits in the law and it certainly fits on the facts. What's the authority as to why it still fits within the law in light of Johnson? I think the closest we have come is the Nabisco case, which is analogous, because it allows to look at the context of the underlying racketeering predicates. And that was post-Johnson. I think it was a couple of weeks ago. But still in that scenario dealing with the extraterritorial analysis, it says context is important of the underlying racketeering predicates. And so we still believe that again, obviously not on point, but analogous situation here that would still permit this court and the district court to look at the underlying predicates themselves to see whether or not that conspiracy is a crime of violence. And then we'd still rely on juvenile mail, although again, it's that's pre-Johnson. I can turn to the if there's any more questions on that. I'll just turn briefly to the drug trafficking case. Here are my main response to appellant's argument is that she's trying to make the for the gang requirement one too narrow. And I guess as a threshold matter, there is no requirement that in order to participate as a racketeer, you have to do things for the benefit of the gang. That's one way to satisfy that. It's an easy way to satisfy it, but it is not the only way. And Sun Savings says very clearly that all we really need to show is the nexus, the racketeering defendant, the racketeering conduct. What is the nexus here? Again, the record was replete with very basically you cannot sell drugs in the Pueblo del Rio housing projects unless you're a member of the gang. That by itself shows the nexus between the racketeering conspiracy, the gang, and its defendant because he sold a lot of drugs in the gang's territory. And as the court already pointed out, he also on top of it manufactured crack cocaine for others. It is a skill. It's a skill he bragged about. He sold drugs to other co-defendants for them to resell because there was testimony about they would come to these stash houses, get together, he would cook up the crack cocaine and they would flood it on the streets. And just simply by the fact of him advertising and selling drugs means and meant that it was described as a 24-hour drive-through. People came to the Pueblo del Rio housing projects to buy crack for decades at any hour. And it's because of people like defendant laws. Moreover, it's because he's protected by the gang while he sells drugs. His activity to sell drugs, lots of drugs regularly as is essentially his full-time job. There's no testimony he had any other job but selling crack cocaine in the projects at multiple locations. And we think that easily satisfies, again, that nexus requirement. It is the reason he's allowed to sell drugs is because he's a member of the enterprise. Therefore, that satisfies the nexus requirement under sun saving. And that was my main response on that. Happy to answer that issue or any others. If not, I will submit. Thank you. I think it got fleshed out pretty well. I just wanted to add one point. On the 924C, there's also a requirement that the weapon has to be used or carried in the first place. It's a furtherance of the crime of violence. And I didn't mention this when I was discussing it before. But remember, this weapon was seized after a car accident. There was nothing that showed that he was doing any of the drug dealing. It was seized after a chase by the police that ended in a car accident and then he fled on foot from the police. That's correct, but we don't know why he was speeding, what he was doing. We don't know what he was driving and was in an auto accident and then ran out of the car. And how do we know that that's in furtherance of a RICO conspiracy? Because of the evidence at trial that the gang members were encouraged to carry guns while they were in the projects to further intimidate the people that lived there. But we don't know at the time, other than saying he was in possession of a weapon, I guess that would make him strictly liable. He wasn't doing a drug dealing. He wasn't doing a robbery. He wasn't doing anything. He was driving. He was eluding the police in a relatively high-speed chase in the neighborhood. That's true, but was that part of the RICO conspiracy? Well, in light of all the evidence submitted and the question, looking at it in the most favorable light to the prosecution, whether a jury could reasonably conclude that the purpose of the firearm, I mean, you know, it's fair to make that argument, but I think it's a tough one. Well, I agree. I would like to point the court's direction to reading the case that I attached to the 28J, which said that the conspiracy to commit a Hobbs Act robbery was not a crime of violence because of the exact reasons that it didn't fit into the A section. So that was a 2016 unpublished opinion. I thought it was very enlightening. The other cases were always under the residual clause, but I think the court has several ways to go here in reversing that, and I appreciate it. Thank you. Thank you very much.
judges: Murguia, Watford, Bolton